# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 57

### APRIL TERM, A.D. 2022

### May 5, 2022

MOSES INC., a Wyoming corporation,

Appellant
(Plaintiff),

v.

NEVA LARUE MOSES and LORI
HALL, as Personal Representative of the
Estate of Neva Larue Moses and Trustee
for the benefit of the Neva Larue Moses
Living Trust,

Appellees
(Defendants).

S-21-0170

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
Greggory J. Savage (admitted pro hac vice) and Gregory S. Roberts (admitted pro hac vice), Ray Quinney & Nebeker P.C., Salt Lake City, Utah; Carrie L. Sisson, Sisson Law Firm, LLC, Sheridan, Wyoming. Argument by Mr. Roberts.

*Representing Appellee:*
Judith Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Ms. Studer.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Neva Larue Moses was driving a vehicle owned and insured by Moses Inc. when she negligently collided with another vehicle, killing her and the other driver. Moses Inc.'s insurer settled the resulting negligence claim, and then canceled Moses Inc.'s policy, forcing it to purchase a policy from another carrier at a much higher premium, and with lower coverage rates and higher deductibles. Moses Inc. brought a negligence claim against the Estate of Neva Larue Moses (the Estate) and the Neva Larue Moses Living Trust (the Trust) for its increased insurance costs. The district court dismissed the amended complaint for failure to state a claim, and we affirm.

## ISSUES

[¶2]    Moses Inc. raises a single issue on appeal, which we rephrase as:

> Whether one who borrows a vehicle owes the owner a duty of care to protect it from increased insurance costs.

[¶3]    The Trust raises an additional issue, which it claims is jurisdictional. We rephrase that issue as:

> Whether Moses Inc.'s failure to bring its claim directly against the Estate rather than against the Trust deprives this Court of jurisdiction.

## FACTS

[¶4]    Ms. Moses was a former employee and shareholder of Moses Inc., and Moses Inc. permitted her to drive a vehicle owned and insured by it. On April 9, 2020, Ms. Moses was driving a Moses Inc. vehicle near Rock Springs, Wyoming when she attempted to drive east on a service road, but instead entered an off ramp for the westbound lane of Interstate 80. She collided head-on with a westbound vehicle. Both drivers were killed immediately.

[¶5]    Moses Inc.'s insurer paid millions to settle the negligence claim resulting from Ms. Moses's negligence and then canceled Moses Inc.'s policy. Moses Inc. obtained insurance through a different carrier, but the new policy came with lower coverage rates and higher deductibles, increasing Moses Inc.'s annual premium by approximately $200,000.

[¶6]    Moses Inc. filed an amended complaint against the Estate and the Trust seeking $15,000 for the loss of its vehicle as well as damages for its increased insurance costs. The Trust moved to dismiss on grounds that no duty was owed to Moses Inc., and the economic loss rule barred Moses Inc.'s claim. The court dismissed the amended complaint for failure

1

to state a claim.[1] It concluded: "This claim is too remote and not a reasonably foreseeable consequence in a duty-risk analysis for the tort of negligence. Public policy would not be served by allowing recovery of Plaintiff's increased premiums."

[¶7] The district court further ruled that if it had not found the question of duty dispositive, it would have dismissed based on application of the economic loss rule "and/or for lack of subject matter jurisdiction."[2] Moses Inc. timely appealed the order dismissing its amended complaint.[3]

## STANDARD OF REVIEW

[¶8] "Although dismissal is a drastic remedy which should be granted sparingly, a motion to dismiss is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." *Whitham v. Feller*, 2018 WY 43, ¶ 13, 415 P.3d 1264, 1267 (Wyo. 2018) (quoting *Bush Land Dev. Co. v. Crook Cnty. Weed & Pest Control Dist.*, 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017)) (internal quotation marks omitted).

> We review orders granting a motion to dismiss under
> Rule 12(b)(6) de novo. *Craft v. State ex rel. Wyo. Dep't of
> Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020). "We

---

[1] In its order, the district court noted that the motion to dismiss sought dismissal of only the Trust, but that it anticipated Moses Inc.'s voluntary dismissal of the Estate. It said:

> The Court notes that while Defendant TRUST's *Motion* argues that a claim against the Estate cannot stand, the *Motion* specifically only requests to dismiss Defendant TRUST. At hearing, counsel for Plaintiff indicated Plaintiff intended to file a motion to dismiss Defendant, Estate of Neva Larue Moses, without prejudice. Counsel for Defendant did not object. Such has not yet been filed, but will be granted by the Court once filed. Currently no probate has been filed related to the Estate of Neva Larue Moses, and no claim against the Estate has been made.

The record contains no order dismissing the Estate, but Moses Inc. represented in its brief on appeal that the Estate is no longer a party to these proceedings.

[2] As we discuss, we find no jurisdictional defect. If there had been a jurisdictional defect, that would have been the required ground for dismissal. *See Matter of U.S. Currency Totaling $14,245.00*, 2022 WY 15, ¶ 8, 503 P.3d 51, 54 (Wyo. 2022) ("If a court does not have subject matter jurisdiction, it lacks any authority to proceed, and any decision, judgment, or other order is, as a matter of law, utterly void and of no effect for any purpose.") (cleaned up) (quoting *Best v. Best*, 2015 WY 133, ¶ 10, 357 P.3d 1149, 1152 (Wyo. 2015)).

[3] Moses Inc. focuses its appellate argument solely on the dismissal of its claim for increased insurance costs and makes no claim that the district court erred in dismissing its $15,000 claim for the lost value of the vehicle. That claim is therefore waived. *See Mantle v. North Star Energy & Constr., LLC*, 2020 WY 125, ¶ 19, 473 P.3d 279, 284 (Wyo. 2020) (failure to raise issue on appeal constitutes waiver or abandonment of that issue).

employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint ... as true and view them in the light most favorable to the non-moving party." *Id*. (quoting *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)). Dismissal is appropriate where it is certain from the face of the complaint that the plaintiff cannot assert any fact that would entitle him to relief. *Craft*, 2020 WY 70, ¶ 9, 465 P.3d at 399 (citing *Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007); W.R.C.P. 12(b)(6)).

*Dockter v. Lozano*, 2020 WY 119, ¶ 6, 472 P.3d 362, 364 (Wyo. 2020).

## DISCUSSION

[¶9]   The Trust challenges the ability of Moses Inc. to file its action directly against the Trust rather than against the Estate and claims this issue is jurisdictional. We will therefore address that question before turning to the question of whether Ms. Moses owed Moses Inc. a duty to protect it from increased insurance costs. *See Devon Energy Prod. Co., LP v. Grayson Mill Operating, LLC*, 2020 WY 28, ¶ 10, 458 P.3d 1201, 1205 (Wyo. 2020) ("If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue.").

### I.   The Trust's argument that Moses Inc. should have filed its amended complaint against the Estate rather than against the Trust is not jurisdictional, and because it was neither raised below nor shown to be fundamental, we will not consider it on appeal.

[¶10]  The Trust contends that Moses Inc.'s amended complaint was not properly filed against it and should have instead been brought against the Estate. It further contends that since Moses Inc. did not first file its claim with the Estate, as statutorily required, the district court was without jurisdiction over Moses Inc.'s amended complaint. "We review whether a court has jurisdiction over a case de novo." *Rosen v. State*, 2022 WY 16, ¶ 7, 503 P.3d 41, 44 (Wyo. 2022) (quoting *Interest of RR*, 2021 WY 85, ¶ 53, 492 P.3d 246, 261 (Wyo. 2021)).

[¶11]  Moses Inc.'s amended complaint contained no allegation that it had filed a claim for its damages with the Estate. In fact, the record suggests that the Estate had not yet been opened. Thus, if at this point Moses Inc.'s action was against the Estate, the Trust would be correct that the district court would have lacked subject matter jurisdiction based on Moses Inc.'s failure to comply with the statutory claims procedure. *See* Wyo. Stat. Ann. § 2-7-706 and 717 (LexisNexis 2021); *In re Estate of Graves*, 2011 WY 165, ¶ 14, 267 P.3d 1070, 1073 (Wyo. 2011); *Matter of Mora's Estate*, 611 P.2d 842, 850 (Wyo. 1980).

This action is not, however, against the Estate; it is against the Trust. Therefore, the question is not whether the jurisdictional prerequisites were met for bringing a claim against the Estate, but instead whether Moses Inc. may bring an action directly against the Trust. That is a fair question, but it is not jurisdictional. *See Estate of Read v. A.D.K. Properties*, 766 So.2d 393, 394 (Fla. Dist. Ct. App. 2000); *Tobin v. Damien*, 723 So.2d 396, 397 (Fla. Dist. Ct. App. 1999) (both upholding dismissals of claims made directly against trusts not on jurisdictional grounds but for failure to state a claim).

[¶12]  Since this argument is not jurisdictional, we will not consider it on appeal unless it was first made to the district court or is of a fundamental nature. *See Interest of AA*, 2021 WY 18, ¶ 10, 479 P.3d 1252, 1256 (Wyo. 2021) (holding that this Court "will not consider an issue raised for the first time on appeal" unless it is jurisdictional or "of such a fundamental nature that it must be considered"). The record on appeal does not reflect that Moses Inc. made this argument to the district court, and it has not shown the issue is fundamental. We therefore will not consider it.[4]

## *II.  Ms. Moses did not owe Moses Inc. a duty to protect it from increased insurance costs.*

[¶13]  The elements of a negligence claim are "(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages." *Cornella v. City of Lander*, 2022 WY 9, ¶ 25, 502 P.3d 381, 387 (Wyo. 2022) (quoting *Miller v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶ 15, 500 P.3d 242, 246-47 (Wyo. 2021)). "Duty and breach of duty must be established before addressing causation and the tortfeasor's responsibility for any harm suffered." *Lucero v. Holbrook*, 2012 WY 152, ¶ 7, 288 P.3d 1228, 1232 (Wyo. 2012) (citing *Halpern v. Wheeldon*, 890 P.2d 562, 565 (Wyo. 1995)).

[¶14]  Whether a duty exists is a question of law. *Cornella*, 2022 WY 9, ¶ 26, 502 P.3d at 387 (citing *Burns v. Sam*, 2021 WY 10, ¶ 10, 479 P.3d 741, 744 (Wyo. 2021)). A duty may arise from a contract, a statute, or the common law and will be recognized when,

> upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the

---

[4] The Trust may very well have raised this issue in its motion to dismiss, but that motion was not designated as part of the record on appeal. It is a party's responsibility to designate those parts of the record to which it intends to direct the Court. *See* W.R.A.P. 3.05(b), (c); *Matter of Phyllis V. McDill Revocable Tr.*, 2020 WY 99, ¶ 12, 468 P.3d 694, 698 (Wyo. 2020) (all portions of the record necessary for Court to make a decision must be designated); *Shepard v. Beck*, 2007 WY 53, ¶ 10 n.3, 154 P.3d 982, 987 n.3 (Wyo. 2007) (acknowledging argument may have been made below but rejecting it as new on appeal because the record on appeal did not reflect it).

4

interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.

*Cornella*, 2022 WY 9, ¶ 26, 502 P.3d at 387 (quoting *Warwick v. Accessible Space, Inc.*, 2019 WY 89, ¶ 13, 448 P.3d 206, 211-12 (Wyo. 2019)).

[¶15]  In Wyoming, we generally recognize "[o]ne owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 15, 419 P.3d 503, 510 (Wyo. 2018). We have also observed, however, that there may be circumstances that require us to refine the scope of duty as between particular parties. *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 13, 49 P.3d 1011, 1015 (Wyo. 2002) (quoting *Vassos v. Roussalis*, 625 P.2d 768, 772 (Wyo. 1981)).

[¶16]  *Andersen* illustrates this. In that case, the Two Dot Ranch was sued after two people died in collisions with one of its black Angus cows on a highway that ran through an area posted as open range. *Andersen*, 2002 WY 105, ¶¶ 1, 4, 49 P.3d at 1012-13. We described the issue before the Court as follows:

> The true issue we must address is not whether there is a duty of reasonable care owed by the rancher to motorists in posted open range, and vice versa. As stated above, the common law of negligence creates a general duty to exercise the degree of care required of a reasonable person in light of all the circumstances. The plaintiffs' argument seeks to have this general duty create a question of fact as to whether Two Dot was acting reasonably by allowing its livestock to graze on this highway that night. Two Dot does not deny it is subject to the common-law duty of care under the circumstances but rather argues that duty does not extend to requiring livestock owners to prevent livestock in open range from naturally wandering onto unfenced roads. . . . These arguments frame the genuine, and somewhat narrow, issue in this case: ***whether the scope of the duty owed by livestock owners to motorists extends to preventing livestock from wandering onto an unfenced roadway in posted open range***.

*Id*., 2002 WY 105, ¶ 29, 49 P.3d at 1021 (internal citations omitted and emphasis added).

[¶17]  Similarly, in this case, we are asked to recognize an expansion of the duty Ms. Moses owed Moses Inc. Though the parties do not characterize the relationship between

them in this fashion, when one party loans its vehicle to another, a bailment is created, along with an attendant duty of care.

> In *Baugh v. Rogers*, 24 Cal.2d 200, 148 P.2d 633, 152 A.L.R. 1043, it was held that when the owner of an automobile gives another person possession of it with permission to operate it, a contract of bailment is created; and that a bailee is responsible in damages to the bailor for any injury to the bailed property resulting from a failure of the bailee to exercise a proper degree of care in protecting it.

*Shook v. Beals*, 217 P.2d 56, 63 (Cal. Ct. App. 1950); *see also* 19 *Williston on Contracts* § 53:1 (4th ed. Nov. 2021 update) ("A bailment may be defined as the rightful possession of goods by one who is not the owner.") (footnote omitted); 8 C.J.S. *Bailments* § 4 (March 2022 update) ("The term 'bailment' is frequently applied to a gratuitous loan, as when a person borrows an automobile or other vehicle for her own use.") (footnotes omitted).[5]

[¶18]   Ms. Moses, as bailee, owed Moses Inc., as bailor, a duty of care to protect its vehicle from damage. *Aviat*, 2009 WY 98, ¶ 19, 213 P.3d at 965; *Anderson Excavating and Wrecking Co. v. Certified Welding Corp.*, 769 P.2d 887, 891 (Wyo. 1988). The scope of the duty that we have thus far recognized, however, extends solely to the physical damage to the property and losses connected with the use of that property. *See Reposa v. Buhler*, 770 P.2d 235, 237 (Wyo. 1989) (adopting Restatement (Second) of Torts § 927 as measure of damages for property destruction, which includes value of property at time of loss and damages for loss of use); 8A Am. Jur. 2d *Bailments* § 253 (damages for bailee's negligent destruction of property include value of property at time of loss and loss of use damages). The question we must address is whether to expand a bailee's duty—from a duty to protect the bailor from property loss to a duty to protect the bailor from increased insurance costs.

[¶19]   Whether we will recognize such a duty depends on weighing the following factors:[6]

> (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's

---

[5] The duty of care owed by a bailee to a bailor is an example of a duty arising from contract. *See Aviat Aircraft, Inc. v. Saurenman*, 2009 WY 98, ¶ 19, 213 P.3d 956, 965 (Wyo. 2009) (recognizing the tort duties that arise in a bailment whether created by express or implied contract). "Where goods have been damaged or destroyed while in the possession of a bailee, the bailor may bring a claim for breach of contract *or* may bring a tort claim (for negligence or, perhaps, for conversion)." *Foster v. Bd. of Governors of the Colo. State Univ. Sys.*, 342 P.3d 497, 503 (Colo. App. 2014).

[6] These factors are often referred to as the *Gates* factors in reference to the case in which this Court originally adopted them. *See Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986).

6

conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Lucero*, 2012 WY 152, ¶ 10, 288 P.3d at 1233 (quoting *Gates*, 719 P.2d at 196); *see also Burns*, 2021 WY 10, ¶ 12, 479 P.3d at 745.

[¶20]  The weight of these factors does not support recognition of a duty on the part of Ms. Moses to protect Moses Inc. from increased insurance costs.

### *(1) Foreseeability of Harm to Plaintiff*

[¶21]  Foreseeability is the most important of the *Gates* factors, and "is the fulcrum on which duty—its existence or absence—rests." *Weir v. Expert Training, LLC*, 2022 WY 44, ¶ 37, 507 P.3d 442, 451 (Wyo. 2022) (quoting *Burns*, 2021 WY 10, ¶ 12, 479 P.3d at 745). "Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others." *Id*. We have recognized the "essence" of foreseeability for purposes of finding a duty is akin to the inquiry into proximate cause and includes considerations such as remoteness and whether the harm was the natural and probable consequence of the negligent act. *Killian v. Caza Drilling, Inc.*, 2006 WY 42, ¶ 20, 131 P.3d 975, 984 (Wyo. 2006); *see also Lucero*, 2012 WY 152, ¶ 13, 288 P.3d at 1234 ("Foreseeability addresses whether the harm incurred was a natural consequence of the alleged tortfeasor's actions.").

[¶22]  As Moses Inc. concedes, those courts that have addressed increased insurance costs as damages have held that they are remote from and not a foreseeable risk that flows from negligent conduct. These decisions stemmed from three types of cases: 1) where a tortfeasor negligently caused an automobile accident and the plaintiff claimed damages for increased automobile insurance costs; 2) where a tortfeasor negligently caused property damage and the plaintiff claimed damages for increased property insurance costs; and 3) the greatest number of cases, where a tortfeasor negligently injured an employee and the employer-plaintiff claimed damages for increased workers' compensation costs. *See Severn Place Assocs. v. Am. Bldg. Servs., Inc.*, 930 So.2d 125, 128-29 (La. Ct. App. 2006) (property insurance); *Southland Constr., Inc. v. Greater Orlando Aviation*, 860 So.2d 1031, 1034-35 (Fla. Dist. Ct. App. 2003) (workers' compensation); *La. Swabbing Serv., Inc. v. Enter. Prods. Co.*, 784 So.2d 862, 866 (La. Ct. App. 2001) (workers' compensation); *Higbie Roth Constr. Co. v. Houston Shell & Concrete*, 1 S.W.3d 808, 813 (Tex. App. 1999) (workers' compensation); *RK Constructors, Inc. v. Fusco Corp.*, 650 A.2d 153, 156-57 (Conn. 1994) (workers' compensation); *Fischl v. Paller & Goldstein*, 282 Cal. Rptr. 802, 804 (Cal. Ct. App. 1991) (workers' compensation); *Unique Paint Co., Inc. v. Wm. F. Newman Co., Inc.*, 411 S.E.2d 352, 353 (Ga. Ct. App. 1991) (workers' compensation); *Johnson v. Broomfield*, 580 N.Y.S.2d 122, 123 (N.Y. Just. Ct. 1991) (auto insurance);

*Whirley Indus., Inc. v. Segel*, 462 A.2d 800, 803 (Pa. Super. Ct. 1983) (workers' compensation); *North Ga. Elec. Membership Corp. v. Thomason & Holsomback Constr. Co., Inc.*, 278 S.E.2d 433, 434 (Ga. Ct. App. 1981) (workers' compensation); *Silvernail v. Hallenback*, 226 N.Y.S.2d 48, 50-51 (N.Y. App. Div. 1962) (auto insurance); *N. States Contracting Co. v. Oakes*, 253 N.W. 371, 372 (Minn. 1934) (workers' compensation).

[¶23]  Moses Inc. acknowledges this weight of authority but contends that the cases are distinguishable. With respect to the two automobile cases, it contends that neither defendant in those cases could have foreseen the plaintiff's increase in insurance costs because the defendants were each at fault in the accidents. In contrast, it argues that Ms. Moses was clearly at fault in the accident underlying this case and she thus should have foreseen that her negligence would cause it to experience increased insurance costs. The flaw in Moses Inc.'s reasoning is that it seeks to distinguish the automobile cases on a ground that was not ultimately the basis for either decision.

[¶24]  In *Johnson*, the court did hold that the defendant could not have foreseen that an accident wholly his fault would result in increased insurance costs for the plaintiff. 580 N.Y.S.2d at 123. The court continued, however, that "a major factor making the Plaintiff's claimed damages remote, indirect and unforeseeable is the fact that the Defendant has no control over the Plaintiff's contractual relationships entered into or sought to be entered with Plaintiff's insurer, i.e., the purchase of automobile liability insurance." *Id*. Likewise, the court in *Silvernail* observed that "[a] negligent act may be the proximate cause of an automobile accident but may also be only a remote cause of some of the damages to a plaintiff occurring because of the happening of the event." 226 N.Y.S.2d at 50. It went on to hold:

> [T]he proximate cause of the increase in the cost of premiums to the plaintiff is the contractual relationship between the plaintiff and his insurance carrier. The contractual terms involved between the insured and his insurance company cannot be contemplated within the knowledge of the defendant who has been involved in the collision which is the basis for the action in negligence. The negligent act herein is thus too remote to give rise to a cause of action for the recovery of any sums by reason of the increase in cost of plaintiff's future automobile liability coverage.

*Id*.

[¶25]  The courts in *Johnson* and *Silvernail* thus based their decisions less on who was at fault in the accidents and more on the remoteness of the injury, which reasoning is in line with our own approach to foreseeability. *See Killian*, 2006 WY 42, ¶¶ 20, 22, 131 P.3d at 984, 986 (considering remoteness of harm in determining foreseeability).

[¶26] The same is true of the Louisiana court's decision in *Severn*, which Moses Inc. likewise contends is distinguishable. In *Severn*, a janitorial service negligently flooded the plaintiff's building, and when the service and its insurer refused to cover all the repairs the plaintiff claimed were required, the plaintiff filed a claim with its own property insurer. 930 So.2d at 126. The plaintiff thereafter filed an action against the janitorial service seeking damages for its increased property insurance premiums. *Id*. The court reviewed decisions from its own and other jurisdictions holding that such damages are remote and unforeseeable and held that those same considerations applied to the case before it. *Id*. at 128-29. The court then concluded:

> In this case, Severn seeks recovery for increased insurance premiums that it claims are a result of American's employee's negligence. However, Severn's insurance premiums increased because Severn made a claim with Hanover, its own insurer, to more quickly repair its property. Hanover informed Severn that if it made a claim, its insurance premiums would increase. Therefore, Severn made the decision to make a claim with the knowledge of a future increase in premiums. Severn could have continued to seek additional damages from American and Lafayette; instead, it chose to make a claim with Hanover, which increased its premiums.
>
> Therefore, we find, as a matter of policy, plaintiff has no cause of action in negligence against defendants for its increased insurance premiums; the damages in this case are too remote.

*Id*. at 129.

[¶27] Moses Inc. contends its claim is distinguishable because unlike the plaintiff in *Severn*, it had no choice but to file a claim with its insurer because Ms. Moses was at fault in the accident. This distinction again ignores the primary holding of *Severn* that increased insurance costs are too remote from the act of negligence to be foreseeable. 930 So.2d at 128-29. The court's application of that holding simply illustrated just how remote the damages were in that case and how far beyond the defendant's negligence and outside its control the insurance relationship was under those circumstances.

[¶28] Moses Inc.'s effort to distinguish the workers' compensation cases is likewise unavailing. It contends that because Ms. Moses knew that Moses Inc. owned and insured the vehicle she was driving, she should have known her negligence would cause it to experience increased insurance costs. It contends this fact distinguishes this case from the

9

workers' compensation cases because in those cases the tortfeasors lacked any such knowledge of the injured parties' circumstances. It argues:

> These holdings are understandable because negligent actors can only foresee harm to those they can immediately identify as injured by their actions. In all of the above cases, the tortfeasor was seemingly ignorant to the innocent party's employment situation and almost certainly unaware of that employer's insurance policies.

[¶29]  Again, Moses Inc. seeks to distinguish the cases on a ground that was not the basis for the decisions. First, many of the cases do not concern tortfeasors who were ignorant of the injured party's employment status and the likelihood of workers' compensation coverage. *See Higbie Roth*, 1 S.W.3d at 810 (employee injured during defendant's delivery of cement to worksite); *RK Constructors*, 650 A.2d at 154-55 (subcontractor's employee injured on worksite by general contractor's employee); *Fischl*, 282 Cal. Rptr. at 803 (defendants injured employee while working together at construction site); *N. States Contracting*, 253 N.W. at 371 (subcontractor's negligence on worksite caused death of general contractor's employee); *see also* 2A *Bruner & O'Connor on Construction Law* § 7:264 (Aug. 2021 update) (noting that courts generally have made no such distinction when conducting a foreseeability analysis).

[¶30]  Additionally, as in the auto and property insurance cases, the focus of the foreseeability analysis in the workers' compensation cases has been on the remoteness of the harm, not the identity or relationship of the parties. For example, in *Higbie Roth*, the court reasoned that

> a third party cannot reasonably foresee that its conduct would cause increased premiums because premium rates result from many concurring factors, many of which are entirely unrelated to the third party's alleged negligence in injuring a particular worker. These factors include the employer's prior loss experience and the internal financial practices of the particular insurance carrier.

1 S.W.3d at 813 (citing *Whirley*, 462 A.2d at 804) (internal citations omitted).

[¶31]  Moses Inc. takes the position that if Ms. Moses could conceive that her involvement in an at-fault accident would cause an increase in Moses Inc.'s insurance costs, then the foreseeability factor weighs in favor of finding a duty. We disagree. As one court explained, "Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed." *RK Constructors*, 650 A.2d at 156. In *RK Constructors*, the Connecticut Supreme Court observed that it may have been foreseeable to the general

contractor that if one of its employees injured an employee of the subcontractor, the subcontractor's workers' compensation premiums would increase. *Id*. at 156. Nonetheless, the court concluded that such foreseeability would not create a duty because of the attenuation between the negligent conduct and the harm. *Id*. at 156-57. This again is consistent with the role we give remoteness in assessing the foreseeability prong of our duty analysis. *See Killian*, 2006 WY 42, ¶¶ 20, 22, 131 P.3d at 984, 986 (considering remoteness of harm in determining foreseeability).

[¶32]  In addition to the remoteness of increased insurance costs, as borne out by the numerous cases which have rejected such a claim, an additional consideration leads us to weigh the foreseeability factor against finding a duty in this case. In *Andersen*, we observed that a livestock owner "may arguably foresee" that collisions could occur between vehicles and its livestock on an open range road.  2002 WY 105, ¶ 44, 49 P.3d at 1025. We nonetheless concluded that the foreseeability factor weighed against finding a duty. *Id*. We reasoned that the harm was more foreseeable to motorists and could be equally guarded against by them.

> However, the motorists on a posted open range highway, being forewarned, have greater capacity to foresee the potential danger by viewing the road at the exact time in question, to make affirmative choices whether to travel the road despite its open range status, to choose the time of day they will be on the road, and to determine the speed and manner of the operation of their vehicles.

*Id*.; *see also Erpelding v. Lisek*, 2003 WY 80, ¶¶ 19-20, 71 P.3d 754, 758 (Wyo. 2003) (holding that although employer's independent psychologist may have foreseen that employee's tenure was in jeopardy, foreseeability factor weighed against finding psychologist owed employee a duty of care because employee and employer "were in greater control of the circumstances that determined whether [employee] would keep his job").

[¶33]  The same reasoning holds true in this case. Moses Inc. had exclusive control over the decision to loan its vehicles and to whom it would loan them. Additionally, it certainly could foresee that a person to whom it has loaned a vehicle might have an accident while driving that vehicle. That being the case, it could have taken steps to minimize the risk that it would suffer an economic loss, such as requiring the driver to carry separate insurance or requiring an indemnification agreement. *See Anderson Excavating*, 769 P.2d at 891 ("[T]he parties to a bailment . . . may specially contract to place the risk of loss or damage

to bailed personal property on the bailee, essentially making bailee an insurer of the personalty.").[7]

[¶34] For the above reasons, we conclude that the foreseeability factor weighs against finding a duty.

### (2) Closeness of Connection between Defendant's Conduct and Injury

[¶35] The closeness of the connection between a tortfeasor's conduct and the injury suffered is "a corollary of foreseeability." *Lucero*, 2012 WY 152, ¶ 13, 288 P.3d at 1234. It is related to causation and considers other contributions to the harm. *Id*. Not surprisingly, the same considerations that led us to weigh the foreseeability factor against finding a duty likewise lead us to conclude that this factor weighs against finding a duty.

[¶36] Numerous factors affect the availability and cost of auto insurance, including: the number, types, and ages of the vehicles insured; the insured's claims experience; the number of drivers and their ages and driving records; how the vehicles are used and stored; the insured's contract with its carrier; and the carrier's internal financial practices, policies, and overall claims experience. These factors were obviously unrelated to Ms. Moses's negligence and beyond her control. *See*, *e.g.*, *Higbie Roth*, 1 S.W. 3d at 813 ("[P]remium rates result from many concurring factors, many of which are entirely unrelated to the third party's alleged negligence in injuring a particular worker."); *Whirley*, 462 A.2d at 804 ("[I]nsurance premium increases result from a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier.").

[¶37] While Ms. Moses's negligence no doubt furnished the "condition or occasion" for Moses Inc.'s increased insurance costs, we do not find a close connection between her negligence and Moses Inc.'s damages. *See Killian*, 2006 WY 42, ¶ 20, 131 P.3d at 985 ("[I]f the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion."). This factor therefore weighs against finding a duty.

### (3) Degree of Certainty that Plaintiff Suffered an Injury

[¶38] There is no question that Moses Inc. suffered damages, and this factor therefore weighs in favor of finding a duty.

---

[7] In making this observation, we do not retreat from our rule that one who entrusts a vehicle to another is responsible for resulting injuries or damage to another only if it knew or should have known of the user's incompetence to operate the vehicle. *See Jack v. Enterprise Rent-A-Car Co. of Los Angeles*, 899 P.2d 891, 894 (Wyo. 1995). What we are concerned with here is not Moses Inc.'s ability to foresee a risk to others, but rather its ability to foresee its own risk of loss when it loans a vehicle.

### *(4) Moral Blame Attached to Defendant's Conduct*

[¶39]   The fourth factor considers a defendant's moral culpability. *Weir*, 2022 WY 44, ¶ 41, 507 P.3d at 452. "Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury." *Id*. (quoting *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶ 30, 81 P.3d 196, 205 (Wyo. 2003)). While Ms. Moses was in the best position to prevent her at-fault accident, we are not persuaded that she was the one best suited to prevent the harm Moses Inc. claims. As we observed above, Moses Inc. had direct control over whether and to whom it would loan its vehicles and could have taken steps to protect itself from the economic loss it now claims. This factor therefore weighs against finding a duty.

### *(5) Policy of Preventing Future Harm*

[¶40]   Whether we are concerned with preventing negligent driving or increased insurance premiums, this factor weighs against finding a duty. As to negligent driving, we have already recognized a "general duty of ordinary care owed by drivers to one another." *Wood*, 2018 WY 62, ¶ 15, 419 P.3d at 510. The potential for criminal liability also acts as a deterrent. *See Sorenson v. State Farm Auto. Ins. Co.*, 2010 WY 101, ¶ 32, 234 P.3d 1233, 1242 (Wyo. 2010) ("Imposing a tort duty to maintain liability insurance might prevent some vehicle owners from failing to maintain insurance. However, criminal sanctions are likely more effective in encouraging owners to obtain the required insurance."). It is therefore unlikely that imposing an extended duty on those who borrow vehicles would have any measurable effect on preventing negligent driving.

[¶41]   As to the increased insurance costs, we believe that Moses Inc. is in the best position to prevent the harm since it has control over whether to loan its vehicles and to whom. Moses Inc. thus does not require the protection of tort law to prevent the harm. *See Anderson Excavating*, 769 P.2d at 891 ("[T]he parties to a bailment . . . may specially contract to place the risk of loss or damage to bailed personal property on the bailee, essentially making bailee an insurer of the personalty.").

### *(6) Remaining Factors*

[¶42] The remaining factors are the extent of the burden upon the defendant, the consequences to the community and the court system, and the availability, cost, and prevalence of insurance for the risk involved. The parties do not provide any meaningful analysis of these factors, and given the weight of the above factors, particularly foreseeability, we need not consider them. *See Lucero*, 2012 WY 152, ¶ 19, 288 P.3d at 1235 (declining to consider factor on which appellant presented no facts or analysis); *Erpelding*, 2003 WY 80, ¶ 31, 71 P.3d at 760 (same); *see also Burns*, 2021 WY 10, ¶ 29,

479 P.3d at 749 (finding no duty based upon lack of foreseeability); *Warwick*, 2019 WY 89, ¶ 45, 448 P.3d at 219 (same).

### *CONCLUSION*

[¶43]   This Court has jurisdiction over the appeal. A person who borrows another's vehicle does not owe the vehicle owner a duty to protect it from increased insurance costs. The district court therefore properly dismissed Moses Inc.'s claim against the Trust.

[¶44]   Affirmed.